# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.S., X.S., and N.D.**

**No. 20-0117** (Wirt County 18-JA-13, 18-JA-14, and 18-JA-15)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.S., by counsel F. John Oshoway, appeals the Circuit Court of Wirt County's January 10, 2020, order terminating her parental rights to B.S., X.S., and N.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Wells H. Dillon, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-dispositional improvement period and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed an abuse and neglect petition against petitioner alleging that she tested positive for methamphetamine and marijuana during her pregnancy upon the birth of N.D. The DHHR also alleged that petitioner failed to provide the children with adequate housing and basic necessities including furniture, running water, and food. Further, the DHHR alleged that petitioner exposed the children to inappropriate caregivers, such as convicted felons. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in November of 2018 wherein petitioner stipulated to abusing and neglecting the children and the court granted her a six-month post-adjudicatory improvement period. In June of 2019, the circuit court found that petitioner was in compliance with her improvement period and granted her an extension.

At a review hearing in September of 2019, the circuit court heard extensive evidence that petitioner was no longer compliant with her improvement period. A DHHR caseworker testified that the guardian accompanied her on an unannounced visit to petitioner's home in July of 2019. The caseworker testified the home was unkempt with trash piling in the children's bedrooms and lacked basic necessities, including food. The caseworker also testified that petitioner was living with a boyfriend who was an inappropriate caregiver. According to the caseworker's testimony, she had previously told the petitioner to cease association with him because he was an unsuitable caregiver for the children. The caseworker explained that the boyfriend was an unsuitable caregiver because petitioner had spent several months with him, devoted lots of attention to him, and she had not improved in caring for her children. The caseworker further testified that petitioner stated during the visit, "I'm done. You can take my kids." The caseworker also noted that petitioner was regularly cancelling visitations with the children and missing parenting classes. In fact, the caseworker testified that petitioner cancelled all visits with the children for several consecutive weeks in July and August of 2019 and failed to maintain contact with the DHHR. Next, a service provider testified that petitioner had initially done "wonderful" with her improvement period but began to waiver and missed all of her parenting classes in July and August of 2019. The service provider testified that petitioner claimed she missed classes due to hospital visits, job interviews, and phone difficulties. The provider testified that she would sometimes arrive at the appointments only to find petitioner absent and that despite their required weekly meetings, petitioner only met with her twice. Finally, a psychologist testified that petitioner's relationship with the boyfriend was concerning because "it indicated she [is] not as willing to do what she needs to do to change her life." The psychologist went on to testify that petitioner needed to "get serious about raising her children." After hearing the evidence, the circuit court found that petitioner was noncompliant with her case plan but nevertheless granted her a six-month post-dispositional improvement period. The circuit court ordered petitioner to attend her scheduled appointments and visits and to cease contact with the boyfriend.

In November of 2019, the circuit court held a final dispositional hearing, during which the DHHR moved for termination of petitioner's parental rights. At the hearing, petitioner testified and acknowledged missing additional visits with the children and required parenting classes. Petitioner claimed a variety of reasons for her absences, including that she had been hospitalized for a miscarriage and that her grandmother was ill. Petitioner also testified that she had not attended therapy in months. The DHHR presented evidence that, even accepting petitioner's claims as true, she did not communicate her absences to the DHHR and provided no documentation for her hospital stays and visits. The DHHR also presented evidence that petitioner does not have a driver's license, although petitioner testified that she drove her grandmother to multiple hospital visits. In light of the evidence at the dispositional hearing, the circuit court found that petitioner "did not make an effort to attend life skills classes, counseling, a domestic battery intervention program or make any significant effort to aid her in parenting." Further, the circuit court found

that petitioner "[has] failed to avail herself [of] the services provided for her, has failed to participate in the improvement periods granted to her and has by her actions shown an intent to abandon her parental rights." Based upon these findings, the circuit court concluded there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on January 10, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her post-dispositional improvement period despite her substantial compliance. Further, petitioner argues that she is very young and coping with the demands of parenting with little to no participation from the children's respective fathers. Petitioner argues that the circuit court failed to take such circumstances into account when petitioner was "coping with difficult life circumstances which would be challenging to a mature adult." Finally, petitioner argues that she could have completed her improvement period while the children are safe in a kinship placement. We find petitioner's arguments unavailing.

Pursuant to West Virginia Code § 49-4-610(7), a circuit court may terminate a parent's improvement period if she "has failed to fully participate in the terms of the improvement period." Here, the record is clear that petitioner failed to fully comply with the terms and conditions of her post-dispositional improvement period. The evidence establishes that she failed to attend parenting and adult life skills classes, participate in counseling and a domestic battery intervention program, or maintain regular communication with her caseworkers throughout her improvement period.

---

[2]The fathers' parental rights also were terminated during the proceedings below. None of the children's fathers have filed appeals. According to the parties, the permanency plan for the children is adoption in their current foster placement.

Further, it is within "the court's discretion to terminate the improvement period before the . . . time frame has expired if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

Although there were points in time when petitioner complied with services generally and even appeared to resolve her substance abuse, she fails to address the fact that she did not complete many of the other terms required by her family case plan. Petitioner argues that "as time passed the juggling of obligations[] became a herculean task for her." However, the record below reflects that petitioner repeatedly failed to stay in contact with her caseworker and often cancelled visits and services without attempts to reschedule. Additionally, petitioner showed a resistance to complying with other portions of her case plan, such as the requirement to cease contact with an inappropriate caregiver for the children. Petitioner argues that the DHHR's requirement to disassociate and avoid relationships with certain individuals "created an extremely hostile environment in which petitioner was bound to fail." Ultimately, however, petitioner bore the responsibility of completing the goals of her family case plan, and she does not address her failure to complete its terms other than arguing that she was still young and immature. "When any improvement period is granted to a respondent [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A). Accordingly, we find that the overwhelming evidence supports the circuit court's finding that petitioner failed to complete the terms of her improvement period and that termination of her post-dispositional improvement period was appropriate.

Finally, based on the evidence of petitioner's sporadic compliance and her failure to attend her parenting classes, counseling, or a domestic battery program, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate her parental rights was not in the spirit of the law, that courts should take a more compassionate view, and courts should work harder to render aid when a parent is trying to comply. We find this argument to be without merit and refuse to accept petitioner's position that the DHHR did not try to remedy her alleged difficulties. Petitioner was provided several opportunities, including a prior post-adjudicatory improvement period. Despite her noncompliance in the first improvement period, the circuit court granted petitioner a post-dispositional improvement period and warned petitioner that she needed to fully comply. Ultimately, the circuit court enumerated several areas in its dispositional order where petitioner failed to make progress as the basis for the termination of her parental rights. The circuit court's findings are based on substantial evidence that petitioner was never fully compliant in her improvement periods and failed to avail herself of many of the services offered. Moreover, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the
> statutory provision covering the disposition of neglected children, [West Virginia

4

Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison